# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| PROASSURANCE INDEMNITY COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL BOYD MCGEE, M.D., <br><br> Defendant. | Case No. 24-CV-__1658_____ <br><br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff ProAssurance Indemnity Company, Inc., formerly ProAssurance Casualty Company ("ProAssurance"), by and through its undersigned attorneys, and for its Complaint for Declaratory Judgment against Defendant Michael Boyd McGee, M.D., states and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action seeking declarations pursuant to 28 U.S.C. § 2201 concerning the respective rights, duties, and obligations, if any, of ProAssurance and Dr. McGee under a Health Care Professional Liability Policy (No. MP116894) that ProAssurance issued to River Valley Forensic Services PA (the "Policy") in connection with the allegations and claims asserted against Dr. McGee in a lawsuit pending in the United States District Court for the District of Minnesota, captioned *Thomas Rhodes v. Ramsey County Medical Examiner Michael McGee, et al.*, Case No. 24-CV-104-BCW (the "Rhodes Lawsuit").

2. Dr. McGee tendered the Rhodes Lawsuit to ProAssurance, seeking a defense and indemnity from ProAssurance under the Policy in connection with the

1

allegations and claims asserted against him in the Rhodes Lawsuit. ProAssurance is defending Dr. McGee in the Rhodes Lawsuit pursuant to a full and complete reservation of rights under the Policy and applicable law but contends none of the allegations and claims against Dr. McGee in the Rhodes Lawsuit are covered under the Policy.

3. A justiciable controversy thus exists between Dr. McGee and ProAssurance that requires declarations by this Court of the respective rights, duties, and obligations, if any, of ProAssurance and Dr. McGee under the Policy in connection with the allegations and claims asserted against Dr. McGee in the Rhodes Lawsuit. Specifically, ProAssurance seeks declarations that it is not obligated to defend or indemnify Dr. McGee under the Policy in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

## THE PARTIES

4. ProAssurance is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Alabama.

5. Upon information and belief, Dr. McGee is a citizen of the State of Minnesota.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within the geographical confines of

this judicial district.

8. This Court has authority pursuant to 28 U.S.C. § 2201 to grant the declaratory and other relief requested by ProAssurance.

## THE RHODES LAWSUIT

9. On or about January 13, 2024, Thomas Rhodes commenced the Rhodes Lawsuit against Ramsey County Medical Examiner Michael McGee, Kandiyohi County Attorney Boyd Beccue, Hennepin County Sheriff's Office Captain William Joseph Chandler, Kandiyohi County, Ramsey County, and Hennepin County (collectively, the "Rhodes Lawsuit Defendants"), alleging the Rhodes Lawsuit Defendants conspired to have him wrongfully prosecuted and convicted for the murder of his wife Jane Rhodes, including by fabricating evidence and a crime that never occurred.

10. A true and correct copy of the Rhodes Complaint in the Rhodes Lawsuit is attached hereto as Exhibit A.

11. The Complaint in the Rhodes Lawsuit alleges that Dr. McGee, as the Medical Examiner for Ramsey County, after meeting and conspiring with Kandiyohi County Attorney Boyd Beccue, produced a Medical Examiner's Report falsely asserting that Rhodes' wife's death was a homicide, and Sheriff's Office Captain William Chandler, acting in concert with Dr. McGee and Beccue, fabricated evidence, including drafting police reports containing demonstrably false information intended to pain the misleading picture that Rhodes was lying about his wife's accidental death.

12. According to Rhodes' Complaint, the Rhodes Lawsuit is a civil rights action filed to bring the Rhodes Lawsuit Defendants' misconduct to light, to hold the

Rhodes Lawsuit Defendants accountable for their actions, and to seek justice for the many years of Rhodes' life that he lost for a crime he did not commit.

13. Under the heading "Defendants' Conspiracy to Manufacture False Evidence Against Plaintiff Rhodes," Rhodes alleges Dr. McGee, then Medical Examiner for Ramsey County, conducted an autopsy of Jane Rhodes on August 6, 1996, the forensic evidence did not support a finding of homicide, and Dr. McGee listed the manner of death as "pending investigation."

14. Rhodes further alleges that "pending investigation" continued to be Dr. McGee's finding for more than five months, during which time he conducted further investigation, including meeting with Kandiyohi County Attorney Beccue on January 8, 1997. Rhodes alleges the meeting occurred before a grand jury was empaneled, prior to a decision to seek an indictment, and when there was not probable cause to arrest or prosecute Rhodes.

15. Rhodes further alleges that by meeting with the prosecutor to solicit non-scientific evidence that should have had no bearing on his medical determination, Dr. McGee was acting outside the permissible discretion of his authority and outside the scope of his statutory discretion as Coroner or Medical Examiner. Rhodes alleges the meeting took place with the intent to manipulate and fabricate evidence that would lead to the arrest and prosecution of Rhodes, which Dr. McGee and Beccue knew or should have known was improper, unethical, unconstitutional, and without probable cause.

16. Rhodes further alleges that at the meeting, Beccue provided Dr. McGee with circumstantial facts that were completely unrelated to the medical or scientific

evidence and that have innocent explanations and in no way implicated Rhodes in the death of his wife. Rhodes alleges that Beccue and Dr. McGee disregarded the innocuous nature of such facts and instead used them to investigate Rhodes, to implicate him in an alleged killing, and to fabricate evidence against him in order to pursue murder charges against him. Specifically, Rhodes alleges that, armed with the circumstantial, non-medical facts provided by Beccue, Dr. McGee disregarded the scientific evidence, changed his determination regarding the manner of Rhodes' wife's death from "pending investigation" to "homicide," and fabricated a report with the false determination that Rhodes' wife's death was a homicide and other false conclusions that were unsupported by the scientific evidence.

17. Rhodes further alleges that Beccue relied on Dr. McGee's report, which Beccue helped fabricate, to convene a grand jury in order to have Rhodes falsely prosecuted for the murder of his wife, that in the course of the investigation and prosecution of Rhodes, Chandler created police reports containing knowingly false information in order to manufacture additional false inculpatory evidence against Rhodes, and that the evidence fabricated by Dr. McGee, Beccue, and Chandler was manufactured in order to pursue the false theory that Rhodes' wife's death was the result of premeditated, intentional homicide, rather than the accident that it was.

18. Under the heading "The Trial and Wrongful Conviction," Rhodes alleges that, based on the false evidence manufactured by Dr. McGee, Chandler, and Beccue, Rhodes was indicted for first-degree and second-degree murder sixteen months after Rhodes' wife's death. Rhodes further alleges that, in furtherance of their conspiracy to

frame Rhodes, Dr. McGee and Chandler met together on at least two separate occasions prior to trial in order to perfect their false testimony and falsely testified that their reports were true and accurate. Rhodes further alleges that as a proximate result of the wrongful conduct on the part of the Rhodes Lawsuit Defendants, and on the basis of the false evidence that they fabricated, a jury convicted Rhodes of first-degree premeditated and second-degree murder on July 29, 1998, resulting in Rhodes being sentenced to life in prison.

19. Rhodes further alleges that, after a thorough investigation, the Conviction Review Unit of the Minnesota Attorney General's Office determined Dr. McGee and Chandler provided insufficient and scientifically unsupported evidence and the State failed to disclose discoverable evidence, namely the notes and content from the January 1997 meeting between Beccue and Dr. McGee and pre-trial meetings between Dr. McGee and Chandler. As a result, Rhodes alleges that his convictions for first-degree and second-degree murder were vacated on January 13, 2023, and that he was released from prison after he agreed to enter an *Alford* plea to second-degree manslaughter in exchange for a sentence of four years, time considered served.

20. Under the heading "The Defendants' Misconduct was Committed in Furtherance of a Conspiracy," Rhodes alleges:

> All of the Defendants, acting jointly and with other members of law enforcement, as well as other unknown co-conspirators, together reached an understanding, engaged in an ongoing course of conduct and joint action, and otherwise conspired and continue to conspire among and between themselves to deprive Plaintiff of his constitutional rights. This conspiracy is evidenced, *inter alia*, by the overt acts set

6

> forth above and below, including, but not limited to, fabricating inculpatory evidence and suppressing exculpatory evidence. By and through these overt acts, each Defendant, jointly and in conspiracy, with a shared understanding, intent, and/or meeting of the minds, deprived, and continues to deprive, Plaintiff of his constitutional rights.

21. Under the heading "Defendant McGee's Sordid History of Fabricating Evidence," the Rhodes Complaint goes on to allege that Dr. McGee has a history of manipulating evidence which has caused the wrongful convictions of a number of individuals and that all ten experts and forensic pathologists who reviewed Dr. McGee's conclusions in the Rhodes case disagreed with his classification of Rhodes' wife's death as a homicide.

22. Under the heading "Damages," Rhodes alleges:

> As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Plaintiff sustained injuries and damages, including the loss of his freedom for over 20 years, personal injuries, pain and suffering, severe mental anguish, and emotional distress."

23. Rhodes' Complaint in the Rhodes Lawsuit contains the following counts against Dr. McGee and the other individual Rhodes Lawsuit Defendants:

   a. Count I – 42 U.S.C. § 1983, Fourteenth Amendment – Violation of Due Process, which claims the misconduct described in the Count "was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to [Rhodes'] clearly established constitutional rights";

   b. Count II – 42 U.S.C. § 1983, Fourth and Fourteenth Amendment – Violation of the Right to Be Free From Unreasonable Seizures and Malicious

7

Prosecution, which claims "[t]he murder charges against [him] were requested with malicious intent, because Defendants McGee, Beccue, and Chandler intentionally committed acts that they had reason to believe were legally prohibited";

    c.    Count III - 42 U.S.C. § 1983, Fourteenth Amendment – Failure to Intervene, which claims the misconduct described in the Count "was objectively unreasonable and/or was undertaken intentionally, with malice and willful indifference to Plaintiffs clearly established constitutional rights";

    d.    Count IV - 42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights, which claims Dr. McGee, Beccue, and Chandler conspired by concerted and joint action to accomplish an unlawful purpose by an unlawful means and such misconduct "was objectively unreasonable and was undertaken intentionally with willful indifference to [Rhodes'] constitutional rights";

    e.    Count V, Malicious Prosecution under Minnesota State Law, which claims "[t]he murder charges against [Rhodes] were requested with malicious intent, because Defendants McGee, Beccue, and Chandler intentionally committed acts that they had reason to believe were legally prohibited"; and

    f.    Count VI Intentional Infliction of Emotional Distress, which claims: "The conduct and actions of Defendants McGee, Beccue, and Chandler were extreme and outrageous. The Defendants' actions were rooted in an abuse of power and authority, and were done intentionally, willfully and wantonly, and/or knowing that there was a high probability that their conduct would cause Plaintiff

8

severe emotional distress as set forth above."

24. The Rhodes Complaint demands compensatory damages from the Rhodes Lawsuit Defendants, punitive damages against the individual Rhodes Lawsuit Defendants, and attorneys' fees, costs, and any additional relief the court deems equitable and just.

## THE POLICY

25. ProAssurance[1] and River Valley Forensic Services PA were parties to the Policy, which was in effect from January 1, 2022 to January 1, 2023, the terms, conditions, definitions, provisions, limitations, exclusions and endorsements of which speak for themselves.

26. A true, correct, and certified copy of the Policy is attached hereto as Exhibit B.

27. Dr. McGee is listed as an Insured Professional under the Policy, which terminated on January 1, 2023, and was thereafter provided tail coverage under the Policy via a Heath Care Professional Liability Policy Reporting Endorsement – Insured Professional (Form PRA-HCP-900 08 05).[2] The Reporting Endorsement provides, in pertinent part as follows:

---

[1] As indicated in Exhibit A, the Policy was issued by ProAssurance Casualty Company. Effective December 31, 2023, ProAssurance Casualty Company was merged with and into ProAssurance Indemnity Company, Inc., and ceased to exist as a separate entity.

[2] Dr. McGee permanently and totally retired from the practice of medicine on December 31, 2022. *See* Dr. McGee's Affidavit of Retirement, attached hereto as Exhibit C.

This endorsement amends the Professional Liability Coverage Part of the policy.

In consideration of an additional premium of $0.00, the **insured professional** named below shall be covered, under the terms and conditions of the **policy**, for liability arising from any **professional incident** that occurs on or after the **retroactive date** applicable to each **insured professional**, as stated below, and prior to the above-stated Termination Date, but which is first **reported** on or after the Termination Date.

**Our** limits of liability resulting from **professional incidents** first **reported** on or after the Termination Date shall be as stated below. The limit of liability stated for each **insured professional** as "Each Professional Incident" is the total of **our** liability to the **insured professional** resulting from any one **professional incident** that is first **reported** on or after the Termination Date. The limit of liability stated for each **insured professional** as "Aggregate" is the total of our liability to the **insured professional** resulting from all **professional incidents** that are first **reported** on or after the Termination Date.

…

**INSURED PROFESSIONAL**

**Primary Limits of Liability**

| **Name** | **Retroactive Date** | **Each Professional Incident** | **Aggregate** |
|---|---|---|---|
| Michael Boyd McGee, M.D. | 3/1/1986 | $1,000,000 | $3,000,000 |

28. The Professional Liability Coverage Part of the Health Care Professional Liability Policy Claims-Made Form (PRA-HCP-031 01 12) provides, in pertinent part, as follows:

**PROFESSIONAL LIABILITY COVERAGE PART**

**I. INSURING AGREEMENT**

Subject to the applicable limit of liability, **we** agree to pay on behalf of each **insured** all sums (in excess of any applicable deductible) that the **insured** shall become legally obligated to pay as **damages** because of any **professional incident** that (1) occurs on or after the **retroactive date** applicable to the **insured** and (2) is first **reported** during the **policy period**; . . . .

**II. INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **professional incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking damages that, if awarded, would be covered by this **policy**, even if any of the allegations of the suit are groundless, false or fraudulent., and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any claim or suit defended by **us**. **We** will not pay fees and expenses of any legal counsel not retained by **us**. . . .

29. The Health Care Professional Liability Policy Claims-Made Form (PRA-HCP-031 01 12) defines certain of the above bolded terms as follows:

As used in this **policy**, the following terms shall have the following meanings:
. . .
**Damages** means all amounts of money which are payable under this **policy** because of injury, including death.
. . .
**Policy period** means the period specified as such in the **Coverage Summary.**

**Professional incident** means:
    A.   a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional**

11

**services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in a claim for **damages**; or

B. a single act or omission or a series of related acts or omissions by an **insured professional** during the performance of **peer review services** which results, or is likely to result, in a claim for **damages**.

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**. In no event shall separate, discrete events or injuries that occur during a single medical or dental procedure or continuing course of related treatments constitute more than one **professional incident**. In all cases involving a series of related acts or omissions during a continuing course of **professional services**, the **professional incident** shall be deemed to have occurred at the time of the earliest act or omission comprising that **professional incident**, even if it began before the **retroactive date**.

**Professional services** means the provision of medical or dental services to a patient of an **insured**, including treatment, making diagnoses and rendering opinions or advice, in accordance with any and all required licenses for the provision of such services.

. . .

**Reporting Endorsement** (or "Tail Coverage") means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **professional incidents** first **reported** on or after the date of termination of the insurance provided by this **policy** to the **insured**.

. . .

**We**, **our** and **us** refer to the company that issued this **policy** and is designated as "THE COMPANY" on the **Cover Page**.

30. The Health Care Professional Liability Policy Claims-Made Form (PRA-

HCP-031 01 12) contains the following pertinent exclusions:

> **III. EXCLUSIONS**
>
> **We** will not pay **damages** because of any of the following, and **we** have no obligation to provide a defense for any claim or suit alleging any of the following:
>
> . . .
>
> C. Liability arising out of any fraudulent, criminal, malicious, or intentionally wrongful act or omission, including but not limited to liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity, whether under the guise of **professional services** or not; provided, however, that **we** will defend (up to a maximum of $100,000 in costs, expenses, and attorney fees for all such claims first **reported** during the **policy period**) any claims alleging liability excluded by this paragraph until such time as the **insured** is adjudicated to have committed, or pleads guilty to, an act or omission described in this paragraph;
>
> . . .
>
> E. Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, violation or denial of civil rights, breach of electronic data security, violation of the federal Anti-Kickback statute, liability under the Federal False Claims Act or the Patient Protection and Affordable Care Act, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction, including but not limited to attorney fees or multiples of compensatory damages such as double or treble damages;

31. ProAssurance incorporates by reference all terms, conditions, provisions, definitions, limitations, exclusions, and endorsements of the Policy into this Complaint as if fully set forth herein.

32. The Policy, by its terms, conditions, provisions, definitions, limitations, exclusions, and endorsements, only provides coverage to the extent: (a) all elements of the Policy's Insuring Agreement are satisfied—including without limitation the requirements that those sums that the insured becomes legally obligated to pay be "damages" because of a "professional incident"; (b) all exclusionary or limitation provisions are not applicable—including without limitation Exclusions C and E of the Health Care Professional Liability Policy Claims-Made Form; and (c) if any coverage excluded or otherwise limited is restored by any exceptions.

33. ProAssurance is defending Dr. McGee in the Rhodes Lawsuits under the Policy pursuant to a full and express reservation of rights, including without limitation the right to disclaim coverage based on the operation of the Policy provisions quoted above, withdraw from the defense, and file this declaratory judgment action.

## COUNT I – DUTY TO DEFEND

34. ProAssurance repeats and reiterates each and every allegation contained in Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. An actual controversy exists between ProAssurance and Dr. McGee as to whether ProAssurance is obligated under the Policy to defend Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

36. The Policy's terms, conditions, definitions, provisions, limitations, exclusions and endorsements, all of which speak for themselves, govern the rights, duties, and obligations, if any, of ProAssurance and Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

37. The Policy's terms, conditions, definitions, provisions, limitations, exclusions and endorsements, when applied to the allegations and claims asserted against Dr. McGee in the Rhodes Lawsuit, in light of Minnesota law, establish that ProAssurance has no duty to defend Dr. McGee in connection with any of the allegations and claims asserted against him in the Rhodes Lawsuit.

38. ProAssurance has no duty to defend Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit, including without limitation because (a) the allegations and claims asserted against Dr. McGee do not seek "damages" because of a "professional incident"; and (b) any liability for "damages" Dr. McGee might have in the Rhodes Lawsuit is wholly excluded from coverage by Exclusion E in the Policy.

39. Any liability for "damages" Dr. McGee might have in the Rhodes Lawsuit is also wholly excluded from coverage by Exclusion C in the Policy such that Exclusion C will also apply to wholly bar coverage for the allegations and claims asserted against Dr. McGee once the $100,000 defense limit set forth in Exclusion C is exhausted.

40. ProAssurance is entitled to a declaration that it has no obligation under the Policy or otherwise to defend Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

41. Alternatively, if the Court determines the allegations and claims asserted against Dr. McGee in the Rhodes Lawsuit seek "damages" because of a "professional incident" that are not otherwise excluded by Exclusion E in the Policy, ProAssurance is entitled to declaration that it has no obligation under the Policy or otherwise to defend Dr.

15

McGee in connection with the allegations and claims asserted against him once the $100,000 defense limit set forth in Exclusion C is exhausted.

## COUNT II – DUTY TO INDEMNIFY

42. ProAssurance repeats and reiterates each and every allegation contained in Paragraphs 1 through 41 of the Complaint as though fully set forth herein.

43. An actual controversy exists between ProAssurance and Dr. McGee as to whether ProAssurance is obligated under the Policy to indemnify Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

44. The Policy's terms, conditions, definitions, provisions, limitations, exclusions and endorsements, all of which speak for themselves, govern the rights, duties, and obligations, if any, of ProAssurance and Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

45. The Policy's terms, conditions, definitions, provisions, limitations, exclusions and endorsements, when applied to the allegations and claims asserted against him in the Rhodes Lawsuit, in light of Minnesota law, establish that ProAssurance has no duty to indemnify Dr. McGee against any of the allegations and claims asserted against him in the Rhodes Lawsuit.

46. ProAssurance has no duty to indemnify Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit, including without limitation because (a) the allegations and claims asserted against Dr. McGee do not seek "damages" because of a "professional incident"; and (b) any liability for "damages" Dr. McGee might have in the Rhodes Lawsuit that is wholly excluded from coverage by

Exclusion E in the Policy.

47. Any liability for "damages" Dr. McGee might have in the Rhodes Lawsuit is also wholly excluded from coverage by Exclusion C in the Policy such that Exclusion C also applies to wholly bar coverage for the allegations and claims asserted against Dr. McGee.

48. ProAssurance is entitled to a declaration that it has no obligation under the Policy or otherwise to indemnify Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit.

WHEREFORE, ProAssurance demands judgment against Dr. McGee as follows:

A. Declaring that ProAssurance does not now and never has had any obligation under the Policy or otherwise to defend Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit;

B. Alternatively, declaring that ProAssurance has no obligation under the Policy or otherwise to defend Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit once the $100,000 defense limit set forth in Exclusion C is exhausted

C. Declaring that ProAssurance does not now and never has had any obligation under the Policy or otherwise to indemnify Dr. McGee in connection with the allegations and claims asserted against him in the Rhodes Lawsuit;

D. Ordering such other and further relief as the Court shall deem just and equitable.

17

O'MEARA WAGNER, P.A.

Date: May 7, 2024

s/ Lance D. Meyer
Lance D. Meyer (#393073)
Lukas F. Belflower (#401161)
7401 Metro Boulevard, Suite 600
Minneapolis, Minnesota 55439-3034
Telephone: (952) 831-6544
Facsimile: (952) 893-8398
E-mail: LDMeyer@OLWKLaw.com
LFBelflower@OLWKLaw.com

*Attorneys for Plaintiff*

(3386588)